UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MIDWEST PRECISION MANUFACTURING, INC., <br><br> Plaintiff, <br><br> v. <br><br> PTG HEAVY INDUSTRIES LTD., YORKSHIRE MACHINE TOOLS LTD., and BRUDERS MACHINE TOOLS, INC., <br><br> Defendants. | Case No. 11-CV-570-JPS <br><br><br> ORDER |

On October 7, 2011, defendant PTG Heavy Industries Ltd. ("PTG") filed a Partial Motion to Dismiss the Amended Complaint (Docket #21). Plaintiff Midwest Precision Manufacturing, Inc. ("Midwest") has alleged eight causes of action against PTG: breach of contract, breach of express warranty, breach of implied warranty, and four forms of misrepresentation (intentional, statutory, strict, and negligent). Midwest also alleges an eighth cause of action for "loss of business/profits," though it appears only to allege those as damages flowing from the other enumerated causes of action. PTG requests dismissal of all but the first two claims. Based upon the analysis that follows, the motion will be granted.

1. Background

The underlying dispute involves the sale by PTG to Midwest of a deep hole boring machine, used to bore holes in metal. The parties executed the sale/purchase agreement pursuant to a 2008 contract ("2008 PTG Contract"). However, the boring machine was also, as alternatively alleged in the complaint, the subject of a 2007 contract of sale ("2007 Yorkshire Contract")

between defendant Yorkshire Machine Tools Ltd. ("Yorkshire") and Midwest. The parties executed the 2007 Yorkshire Contract, but it was never performed because Yorkshire subsequently filed for bankruptcy protection. In 2008, PTG, then under a previous name, acquired certain Yorkshire assets, including the boring machine, through the bankruptcy in an asset purchase agreement. Midwest does allege that PTG purchased Yorkshire assets and further alleges that the purchase "amounts to a consolidation or merger" and that PTG is, therefore, a "mere continuation" of Yorkshire.[1] After the asset purchase, PTG and Midwest then entered the 2008 PTG Contract. The causes of action alleged by Midwest arise from the alleged failure of the boring machine to meet the specifications of either contract. As such, Midwest seeks to hold PTG liable either directly under the 2008 PTG Contract, or under the 2007 Yorkshire Contract through its position as alleged successor to Yorkshire.

2. Analysis

In the instant motion, PTG does not challenge counts one or two for breach of contract and breach of express warranty to the extent they are directed toward the 2008 PTG Contract. However, PTG makes four arguments for dismissal of the remaining counts against it (as well as the first two to the extent they apply through the 2007 Yorkshire Contract): PTG cannot be liable as a successor to Yorkshire through an asset purchase agreement; alternatively, the 2007 Yorkshire Contract contains a forum selection clause making this district an improper venue; the four

---

[1] Midwest actually alleges that PTG's wholly-owned subsidiary purchased the assets and is a mere continuation of Yorkshire, but, in its brief, PTG points out that the "subsidiary" in question was simply PTG's former name.

misrepresentation claims are barred by the economic loss doctrine because no damages are alleged beyond those flowing solely from the existence of the contract; and, the breach of implied warranty, as well as the claim for lost profits, are expressly barred by the language of both the 2008 PTG Contract and the 2007 Yorkshire Contract.

Under Federal Rule of Civil Procedure 12, a cause of action may be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3). Further, per Rule 12(b)(6), a motion to dismiss asserts that the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive the motion, the complaint must allege sufficient facts to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must provide the defendant with "fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The court reads the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all possible inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Factual allegations are presumed true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. However, legal conclusions are not entitled to this assumption of truth. *Iqbal*, 129 S. Ct. at 1950. While "labels and conclusions" and "a formulaic recitation of the elements" are insufficient, the complaint need only "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Moreover, a court may view as waived a claim not supported by the plaintiff in opposing a motion to dismiss. *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995) (noting complaint need not contain legal predicate for claim, but "when presented with a motion to dismiss, the non-

moving party must proffer some legal basis to support his cause of action"); *see also Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (finding an unresponsive response "no response" and that the plaintiff "was defaulted for refusing to respond to the motion to dismiss"). "Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Kirksey*, 168 F.3d at 1041.

Finally, it is worth noting at the outset that contracts "attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim" and may, therefore, be considered on a motion to dismiss. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002); *see also Minch v. City of Chi.*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (noting that where a complaint refers to and rests on a contract not attached to the complaint, "a court might be within its rights to consider that document…so long as the authenticity of the document is unquestioned").

### 2.1 Liability Under the 2007 Yorkshire Contract

Because Midwest has failed to respond with any reason why the forum selection clause contained in the 2007 Yorkshire Contract is not applicable here, the court finds the venue improper for all claims arising from that contract, regardless of any possible successor liability on PTG's part. Forum selection clauses "should control unless there is a 'strong showing that it should be set aside.'" *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1290-91 (7th Cir. 1989). Where the clause uses mandatory or obligatory language, it will be enforced unless enforcement "would be

unreasonable or unjust or the provision was procured by fraud or overreaching." *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). Here, the 2007 Yorkshire Contract contains an offer sheet signed by the parties that contains the operative terms and conditions of Yorkshire contracts. (Griffiths Decl. ¶¶ 2-3 & Exs. 1-3) (Docket #22-3, #22-4, #22-5, #22-6). The offer sheet (Griffiths Decl. Ex. 1) refers to the proposal sheet for details, which in turn states that the "Conditions of Sale" are "per Yorkshire Machine Tools Limited Standard terms and conditions," (Griffiths Decl. Ex. 2, at 7). The terms and conditions sheet states that, "The Contract shall be governed by English law and the parties submit to the exclusive jurisdiction of the English courts." (Griffiths Decl. Ex. 3, at § 11(v)). Thus, in light of the plain language of the 2007 Yorkshire Contract which is referenced in and central to the complaint, and further due to Midwest's failure to offer any reason why the forum-selection clause should not be enforced, the court finds that venue is improper in this district.

Midwest's only real argument in opposition[2] is that the contract attached by PTG to its motion to dismiss *might* not be the contract at issue in this case. Midwest argues that its complaint does "not identify any documents and/or provision that make up the contract between the parties, as which documents comprise the contract is still an issue in this lawsuit." (Pl.'s Br. in Opp. 5) (Docket #29). It continues by stating that "[w]ithout agreeing to PTG's assertion that the [contracts] are identified by Carl Griff[i]ths in his Declaration…Midwest disagrees" with PTG's contentions.

---

[2]Midwest offers arguments in response to PTG's assertion that it cannot be liable as a successor under an asset purchase agreement, but that issue need not be resolved where the claims are otherwise dismissed for improper venue.

(Pl.'s Br. in Opp. 5). The court is persuaded by a case from the Northern District of Illinois that this wordplay by Midwest is insufficient to prevent the court from considering the attached documents. In a case involving whether the plaintiff was contractually entitled to a discretionary bonus, the defendants attached a document to their motion which they asserted was the contract in question. *Curran v. JP Morgan Chase, N.A.*, 633 F. Supp. 2d 639, 644 (N.D. Ill. 2009). In response, the plaintiff "neither concede[d] nor dispute[d]" that the document was the contract relied upon but insisted rather that "[t]here was a contract." *Id.* at 644-45. The court concluded that either the document was indeed the contract, and it created no contractual right, or another document formed the basis for the claim, in which case the complaint failed to give reasonable notice of the claim to the defendants. *Id.* at 645. While the Seventh Circuit in *Minch* implicitly warned against considering a document on a motion to dismiss to which a question of authenticity remained, the situation here is analogous to *Curran*. PTG has attached the alleged contract to a sworn declaration of a signatory and, while Midwest attempts to assert that there are factual issues as to what constitutes the contract at issue, it offers no competing declarations or affidavits to place the authenticity in serious dispute. And, while the court has not converted the motion to one for summary judgment, Midwest's equivocating with regard to whether this is the 2007 Yorkshire Contract means that either it *is*, and it clearly makes this venue improper, or PTG apparently has no idea *what* contract is at issue, leading to deficient notice of the claim in the complaint. As such, the court finds venue is either improper on the basis of the clear language of the contract, or Midwest has failed to give sufficient

notice of what contract is at issue in this case. Thus, the court will thus dismiss all claims arising from the 2007 Yorkshire Contract.

### 2.2 Breach of Implied Warranty and Lost Profits from the 2008 PTG Contract

Because the court finds the terms of the 2008 PTG Contract prevent recovery for breach of implied warranty and the recovery of lost profits, the court will dismiss that claim and any claims to the extent they request lost profits. The court first notes that Midwest's argument regarding whether the document attached by PTG is in fact the 2008 PTG Contract is the same as that dealt with above regarding the 2007 Yorkshire Contract. The court finds the argument unpersuasive here as well, and will thus move on to Midwest's substantive arguments against dismissal of the claim of breach of implied warranty and the request to recover lost profits. PTG has attached the 2008 PTG Contract (Griffiths Decl. ¶¶ 5-6 & Exs. 4-5) (Docket #22-3, #22-7, #22-8), and it expressly disclaims any implied warranties. (Griffiths Decl. Ex. 5, at § 10.7). The contract also expressly states that PTG "[i]n no circumstances shall [] be liable for consequential loss howsoever arising" (Griffiths Ex. 4, at 7), and the terms and conditions provide that PTG "shall not be liable to the Buyer for loss of profits, goodwill or any type of special interest or consequential loss" (Griffiths Ex. 5, at § 11.2).

Midwest's response is to argue that, because Wisconsin law excuses a non-breaching party from performance after a material breach, and because the complaint alleges a plausible material breach by PTG, Midwest is "excused" from the terms disclaiming liability for breach of implied warranties and lost profits. PTG argues both English and Wisconsin law in

rebuttal,[3] but, even assuming Wisconsin law applies, Midwest is incorrect. Though a material breach excuses subsequent performance, *e.g. Metro. Sewerage Comm'n of Milwaukee Cnty. v. R.W. Const., Inc.*, 241 N.W.2d 371, 383 (Wis. 1976), the disclaimer of implied warranties and consequential damages is not even logically "performance" that would otherwise be carried out by Midwest under the contract. Midwest, by virtue of PTG's alleged breach, is not excused from all terms of the contract, only from the performance it would otherwise be required to undertake. Midwest cites no authority to the contrary. This is implicit in Wisconsin case law as well. *See Sunnyslope Grading, Inc. v. Miller, Bradford and Risberg, Inc.*, 437 N.W.2d 213, 215 (Wis. 1989) (consequential damages may be limited so long as not unconscionable). As such, the court again finds that the express terms of the contract prevent recovery for breach of implied warranty, or any recovery of lost profits, thus the complaint fails to state a claim; and if the contract attached by PTG is not the one at issue, then Midwest has failed to give sufficient notice of its claim in any event, likewise calling for dismissal. Thus, the court will dismiss the claim for breach of implied warranty and any claims to the extent they seek recovery of lost profits.

     2.3    Tort Claims and the Economic Loss Doctrine

Finally, because Midwest failed to make any response to PTG's arguments regarding dismissal of the misrepresentation claims, the court will dismiss those as well. Briefly, the economic loss doctrine prevents recovery in tort for solely economic losses related to a commercial transaction. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000) (applying Wisconsin

---

[3] PTG argues that the 2008 PTG Contract is, by its terms, governed by UK law.

law). The purpose is to maintain the distinctions between contract and tort law. *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 34, 262 Wis.2d 32, 662 N.W.2d 652. As before, Midwest has made no argument, and thus the court finds it has waived any opposition to the dismissal of these claims. Moreover, the claims for misrepresentation clearly arise from the contract of sale for the boring machine, and the complaint alleges no tort damages, such as personal injury. Thus, the damages claimed are solely economic and the court finds they are barred by the economic loss doctrine. Because of this, the counts of misrepresentation fail to state a claim for relief and the court will dismiss them.

Accordingly,

IT IS ORDERED that the defendant's Partial Motion to Dismiss the Amended Complaint (Docket #21) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the first and second causes of action as against defendant PTG Heavy Industries Ltd. for breach of contract and breach of express warranty, to the extent they arise from the 2007 contract between the plaintiff and defendant Yorkshire Machine Tools Ltd., be and the same are hereby DISMISSED for improper venue;

IT IS FURTHER ORDERED that the third cause of action as against defendant PTG Heavy Industries Ltd., for breach of implied warranty, be and the same is hereby DISMISSED for failure to state a claim to the extent it arises from the 2008 contract between the plaintiff and PTG, and for improper venue to the extent it arises from the 2007 contract between the plaintiff and defendant Yorkshire Machine Tools Ltd.;

IT IS FURTHER ORDERED that the fourth, fifth, sixth, and seventh causes of action for intentional misrepresentation, misrepresentation in

violation of Wisconsin statute, misrepresentation – strict responsibility, and negligent misrepresentation as against defendant PTG Heavy Industries Ltd. be and the same are hereby DISMISSED for failure to state a claim; and

IT IS FURTHER ORDERED that any claims as against defendant PTG Heavy Industries Ltd. requesting lost profits be and the same are hereby DISMISSED for failure to state a claim to the extent they request lost profits.

Dated at Milwaukee, Wisconsin, this 13th day of January, 2012.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge